IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TROY COVERDALE<br>343 Oak Street<br>Bremen, Ohio 43107 | ) ) ) ) | CASE NO. |
| -and- | ) ) | JUDGE: |
| LONNIE DREHER<br>39 5th Avenue SW<br>Etna, Ohio 43062 | ) ) ) ) | **COMPLAINT FOR DAMAGES**<br><br>**(Jury Demand Endorsed Hereon)** |
| -and- | ) ) | |
| JOSHUA RILEY<br>90 E 5th Street<br>Frazeysburg, Ohio 43822 | ) ) ) ) | |
| -and- | ) ) | |
| DONALD TUCKER<br>2856 Balen Avenue<br>Columbus, Ohio 43207 | ) ) ) ) | |
| -and- | ) ) | |
| KEVIN BUCKMASTER<br>717 W. 4th Street<br>Frazeysburg, Ohio 43822 | ) ) ) ) | |
|     On behalf of themselves and all<br>    others similarly situated | ) ) ) | |
| v. | ) ) | |
| ELITE AUTO SERVICES, LLC<br>8282 National Road<br>Etna, Ohio 43062 | ) ) ) ) | |
| **Serve also:**<br>Ben Krichbaum<br>P.O. Box 13<br>Kirksville, Ohio 43033 | ) ) ) ) | |



```
   -and –                            )
                                     )
JERRY EVANS                          )
8282 National Road                   )
Etna, Ohio 43062                     )
                                     )
   -and-                             )
                                     )
JONATHAN WRIGHT                      )
9624 Creek Road                      )
Pataskala, Ohio 43062                )
                                     )
                   Defendants.       )
```

Plaintiffs, Troy Coverdale, Lonnie Dreher, Joshua Riley, Donald Tucker, and Kevin Buckmaster (collectively, "Plaintiffs"), by and through undersigned counsel, as their Complaint against Defendants state and aver the following:

## **INTRODUCTION**

1. This is a "collective action" instituted by Plaintiffs as a result of Defendant's practices and policies of not paying its non-exempt employees, including Plaintiffs and other similarly-situated employees, for all hours worked, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

## **PARTIES**

2. Plaintiff Troy Coverdale is a resident of the city of Bremen, County of Fairfield, State of Ohio.

3. Plaintiff Lonnie Dreher is a resident of the city of Etna, County of Licking, State of Ohio.

4. Plaintiff Joshua Riley is a resident of the city of Frazeysburg, County of Muskingum, State of Ohio.

5. Plaintiff Donald Tucker is a resident of the city of Columbus, County of Franklin, State of Ohio.

6. Plaintiff Kevin Buckmaster is a resident of the city of Frazeysburg, County of Muskingum, State of Ohio.

The Employee's Attorney.™



7. Defendant Elite Auto Services, LLC ("Elite") is an Ohio corporation with its principle place of business located in the city of Etna, County of Licking, State of Ohio.

8. Elite is and, at all times hereinafter mentioned, was engaged in related activities performed through unified operation of common control for a common business purpose, and, at all times hereinafter mentioned, was an enterprise within the meaning of section 3(r) of the Fair Labor Standards Act.

9. Upon information and belief, Defendant Jerry Evans is a resident of the state of Ohio.

10. Upon information and belief, Evans is an officer, director, shareholder, principal, member, and or manager of Elite.

11. At all times relevant herein, Evans supervised and/or controlled Plaintiffs' employment with Elite, and acted directly or indirectly in the interest of Elite in relation to its employees, and is an employer within the meaning of section 3(d) of the Fair Labor Standards Act.

12. Upon information and belief, Defendant Jonathan Wright is a resident of the state of Ohio.

13. Upon information and belief, Wright is an officer, director, shareholder, principal, member, and or manager of Elite.

14. At all times relevant herein, Wright supervised and/or controlled Plaintiffs' employment with Elite, and acted directly or indirectly in the interest of Elite in relation to its employees, and is an employer within the meaning of section 3(d) of the Fair Labor Standards Act.

## **JURISDICTION AND VENUE**

15. Jurisdiction is proper over Defendants pursuant to 28 U.S.C. § 1331 in that Plaintiffs are alleging a federal law claim arising under the FLSA, 29 U.S.C. § 201, *et seq*. Thus, this Court has original jurisdiction over the federal law claims asserted in this Complaint under 28 U.S.C. § 1331. Additionally, this Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

The Employee's Attorney.™



16. Venue is properly placed in the United States District Court for the Southern District of Ohio, Eastern Division, because it is the district court for the district, division, and county within which the Defendants operate and conduct business.

17. Written consents to join this action as to Counts I and II, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. § 216(b).

## FACTS

### Elite's Operations and Compensation Scheme

18. Elite is Ohio based auto service garage and tow truck operator which derives a substantial percentage of its income from providing "roadside assistance" to customers of AAA Ohio Motorist Association ("Local AAA Services").

19. Upon information and belief, Elite occasionally engages in other business activities which involve transporting vehicles across state lines ("Out Of State Towing Services").

20. Upon information and belief, Elite's fleet of vehicles consists of approximately 15 Motor Vehicles, 12 of which weigh less than 10,000 pounds.

21. As an AAA Service Provider, Elite provides battery replacement and warranty services, jump-start services, lockout services, tire repair and tire change services, and local towing services.

22. Upon information and belief, at all times referenced herein, Elite's Out of State Towing Services comprised of less than 3 percent of its total trips.

23. Upon information and belief, at all times referenced herein, Elite derived less than 4 percent of its annual revenue from Out Of State Towing Services.

24. Upon information and belief, at all times referenced herein, all Elite employees who were subject to being assigned to provided Out Of State Towing Services met the qualifications required by 49 C.F.R § 391.1 as "carrier drivers."

The Employee's Attorney.™



25. Upon information and belief, at all times referenced herein, Elite maintained a Driver Qualification File for all employees who were subject to being assigned to provide Out Of State Towing Services ("Driver Qualification File").

26. Upon information and belief, at all times referenced herein, Elite employees who were subject to being assigned to provided Out Of State Towing Services maintained Commercial Drivers Licenses ("CDL").

27. Upon information and belief, at all times referenced herein, Elite maintained current Medical Certificates for all employees who were subject to being assigned to provided Out Of State Towing Services ("Medical Certificate").

28. Upon information and belief, at all times referenced herein, Elite maintained Hours of Service Logs for all employees who were subject to being assigned to provided Out Of State Towing Services ("Hour Log").

29. Upon information and belief, at all times referenced herein, all Elite employees who were subject to being assigned to provide Out of State Towing Services were required to perform Pre-trip Inspections on their vehicles ("Inspection").

30. Upon information and belief, at all times referenced herein, the Elite vehicles operated by Plaintiffs did not have apportioned registrations.

31. Upon information and belief, at all times referenced herein, the Elite vehicles operated by Plaintiffs did not have valid Department of Transportation ("DOT") registrations.

32. At all times referenced herein, Plaintiffs were Drivers who provided Local AAA Services only ("Local Drivers").

33. At all times referenced herein, Plaintiffs were paid on a commission only basis.

34. After calculating commissions due to Plaintiffs, Elite would make several deductions from Plaintiff's respective paychecks.

The Employee's Attorney.™



35. Elite would regularly deduct the cost of fuel from each of Plaintiff's paychecks ("Fuel Deductions")

36. Elite would regularly deduct the cost of mechanical repairs to Elite's trucks from Plaintiff's paychecks ("Mechanical Deductions")

37. Elite would regularly deduct the cost of repairing customer's cars, if any, from Plaintiff's paychecks if said damage was linked to roadside services provided by Plaintiffs ("Repair Deductions").

38. Elite would regularly deduct the cost of equipment Plaintiffs required to perform their job duties from Plaintiff's paychecks ("Equipment Deductions").

39. Upon information and belief, Defendants regularly and willfully refused to pay Plaintiffs and those similarly situated a Minimum Wage as prescribed by R.C. § 4111.02.

40. Upon information and belief, Defendants regularly and willfully refused to pay Plaintiffs and those similarly situated one and one-half times their hourly wages for any hours worked over 40.

**<u>Plaintiff Troy Coverdale</u>**

41. Coverdale is a former employee of Elite.

42. Coverdale was first hired by Elite in or around April of 2012.

43. At all times referenced herein, Coverdale was individually covered under 29 U.S.C. § 207(a)(1) of the Fair Labor Standards Act ("FLSA") because he regularly prepared, handled, and/or transmitted information or documents in interstate commerce via the processing of credit card transactions for Elite.

44. Throughout Coverdale's employment, he did not qualify as a carrier driver pursuant to 49 C.F.R § 391.1.

45. At all times referenced herein, Coverdale was employed by Elite exclusively as a Local Driver.

The Employee's Attorney.™



46. As a Local Driver, Coverdale operated small pickup trucks such as Chevrolet S-10s and Ford Rangers to provide Local AAA Services.

47. Throughout Coverdale's employment, he did not perform Out of State Towing Services.

48. Throughout Coverdale's employment, he was not subject to being assigned to provide Out of State Towing Services.

49. Throughout Coverdale's employment with Elite, he did not have a CDL.

50. Elite hired Coverdale with knowledge that he lacked a CDL.

51. Elite did not require Coverdale to obtain a CDL.

52. Elite did not maintain a Driver Qualification File for Coverdale during his employment.

53. Elite did not maintain a Medical Certificate for Coverdale during his employment.

54. Elite did not maintain an Hour Log for Coverdale during his employment.

55. Coverdale was not required to perform Inspections before operating Elite vehicles.

56. Elite regularly made Fuel Deductions from Coverdale's pay.

57. Elite regularly made Mechanical Deductions from Coverdale's pay.

58. Elite occasionally made Repair Deductions from Coverdale's pay.

59. Elite regularly made Equipment Deductions from Coverdale's pay.

60. During his employment with Elite, Coverdale routinely worked 55-60 hours per week.

61. Defendants did not pay Coverdale overtime for all hour worked over 40 in a given week.

62. Coverdale's average hourly wage was less than $11.77 per hour for all hours worked during several weeks in which he worked greater than 40 hours.

63. Coverdale's average hourly wage was at times less than the minimum wage.

64. During his employment, Coverdale witnessed several safety violations and regulatory violations involving the trucks he was required to drive, to include bald and separating tires,

The Employee's Attorney.™



faltering suspensions, and unsecured equipment, as well expired Ohio license plate registrations ("Violations").

65. Coverdale orally reported the Violations to Evans.

66. Evans and Wright refused to remedy the Violations Coverdale reported.

67. Subsequent to orally reporting the Violations to Wright, Coverdale put his concerns in writing.

68. Subsequent to making a written complaint about the Violations to Wright, Wright retaliated against Coverdale by ordering him to operate Elite vehicles until they "blow up," because Wright did not "care" if Coverdale was injured.

69. As a result of Defendants' acts and omissions, Coverdale has sustained and will continue to sustain great and irreparable injury.

**Plaintiff Lonnie Dreher**

70. Dreher is a former employee of Elite.

71. Dreher was first hired by Elite in or around January of 2013.

72. At all times referenced herein, Dreher was individually covered under 29 U.S.C. § 207(a)(1) of the Fair Labor Standards Act ("FLSA") because he regularly prepared, handled, and/or transmitted information or documents in interstate commerce via the processing of credit card transactions for Elite.

73. Throughout Dreher's employment, he did not qualify as a carrier driver pursuant to 49 C.F.R § 391.1.

74. At all times referenced herein, Dreher was employed by Elite exclusively as a Local Driver.

75. Throughout Dreher's employment, he did not perform Out of State Towing Services.

76. Throughout Dreher's employment, he was not subject to being assigned to provide Out of State Towing Services.

77. Throughout Dreher's employment with Elite, he did not have a CDL.

The Employee's Attorney.™



78. Elite hired Dreher with knowledge that he lacked a CDL.

79. Elite did not require Dreher to obtain a CDL.

80. Elite did not maintain a Driver Qualification File for Dreher during his employment.

81. Elite did not maintain a Medical Certificate for Dreher during his employment.

82. Elite did not maintain an Hour Log for Dreher during his employment.

83. Dreher was not required to perform an Inspection before operating Elite vehicles.

84. Elite regularly made Fuel Deductions from Dreher's pay.

85. Elite regularly made Mechanical Deductions from Dreher's pay.

86. Elite occasionally made Repair Deductions from Dreher's pay.

87. Elite regularly made Equipment Deductions from Dreher's pay.

88. During his employment with Elite, Dreher routinely worked 55-60 hours per week.

89. Defendants did not pay Dreher overtime for all hour worked over 40 in a given week.

90. Dreher's average hourly wage was less than $11.77 per hour for all hours worked during several weeks in which he worked greater than 40 hours.

91. Dreher's average hourly wage was at times less than the minimum wage.

92. On one or more occasions, Dreher was paid less than $450.00 for 100 hours of work in a given week.

93. During his employment, Dreher witnessed several Violations.

94. Dreher reported the Violations orally and in writing.

95. Wright refused to respond to Dreher's complaints about Violations.

96. Wright retaliated against Dreher by ordering him to risk bodily harm by operating Elite vehicles that had several substantial safety defects.

97. As a result of Defendants' acts and omissions, Dreher has sustained and will continue to sustain great and irreparable injury.

The Employee's Attorney.TM



**Plaintiff Joshua Riley**

98. Riley is a former employee of Elite.

99. Riley was first hired by Elite in or around January of 2013.

100. At all times referenced herein, Riley was individually covered under 29 U.S.C. § 207(a)(1) of the Fair Labor Standards Act ("FLSA") because he regularly prepared, handled, and/or transmitted information or documents in interstate commerce via the processing of credit card transactions for Elite.

101. Throughout Riley's employment, he did not qualify as a carrier driver pursuant to 49 C.F.R § 391.1.

102. At all times referenced herein, Riley was employed by Elite exclusively as a Local Driver.

103. Throughout Riley's employment, he did not perform Out of State Towing Services.

104. Throughout Riley's employment, he was not subject to being assigned to provide Out of State Towing Services.

105. Throughout Riley's employment with Elite, he did not have a CDL.

106. Elite hired Riley with knowledge that he lacked a CDL.

107. Elite did not require Riley to obtain a CDL.

108. Elite did not maintain a Driver Qualification File for Riley during his employment.

109. Elite did not maintain a Medical Certificate for Riley during his employment.

110. Elite did not maintain an Hour Log for Riley during his employment.

111. Riley was not required to perform Inspections before operating Elite vehicles.

112. Elite regularly made Fuel Deductions from Riley's pay.

113. Elite regularly made Mechanical Deductions from Riley's pay.

114. Elite occasionally made Repair Deductions from Riley's pay.

115. Elite regularly made Equipment Deductions from Riley's pay.

The Employee's Attorney.™



116. On at least one occasion, Riley was not paid at all for two weeks of work due to an Equipment Deduction ("Large Deduction").

117. The Large Deduction placed Riley in arrears with Elite, who treated the remainder of the Large Deduction as a loan.

118. During his employment with Elite, Riley worked 48 hours per week.

119. On one or more occasions, Riley was paid less than $100 for two weeks of work.

120. Defendants did not pay Riley overtime for all hour worked over 40 in a given week.

121. Riley's average hourly wage was less than $11.77 per hour for all hours worked during several weeks in which he worked greater than 40 hours.

122. Riley's average hourly wage was at times less than the minimum wage.

123. Riley routinely complained about Elite's failure to pay him overtime and demanded that Elite begin itemizing the deduction it made from his pay.

124. In or around November of 2013, Riley complained to Wright about an incident in which another driver named James Muncie threatened to shoot him after retrieving a pistol from his vehicle ("Death Threat").

125. Wright refused to take any action against Muncie because "James makes us a lot of money."

126. Subsequent to Wright's refusal to respond to Riley's concerns about the Death Threat, Muncie began to brag to other Elite employees that he had pointed a gun a Riley, and that Riley was "a scared little bitch."

127. After Muncie began bragging about the Death Threat, Riley again complained to Wright in writing ("Second Report").

The Employee's Attorney.™



128.    In or around December of 2013, Riley learned from Buckmaster that Buckmaster had observed an Elite employee smoking marijuana while operating an Elite vehicle ("Marijuana Incident").

129.    Riley reported the Marijuana Incident to Evans both orally and in writing.

130.    In or around January of 2014, Riley injured his shoulder while working at Elite.

131.    As a result of Riley's work-related injuries, Riley filed a claim for Worker's Compensation benefits.

132.    Approximately two weeks after Riley filed a claim for Worker's Compensation benefits, Defendants terminated Riley.

133.    Defendants terminated Riley because he reported the Death Threat.

134.    Defendants terminated Riley because he made the Second Report.

135.    Defendants terminated Riley because he reported the Marijuana Incident.

136.    Defendants terminated Riley because he filed a claim for Worker's Compensation benefits.

137.    Defendants terminated Riley because he made protected wage complaints.

138.    As a result of Defendants' acts and omissions, Riley has sustained and will continue to sustain great and irreparable injury.

**Plaintiff Donald Tucker**

139.    Tucker is a former employee of Elite.

140.    Tucker was first hired by Elite in or around September of 2011.

141.    At all times referenced herein, Tucker was individually covered under 29 U.S.C. § 207(a)(1) of the Fair Labor Standards Act ("FLSA") because he regularly prepared, handled, and/or transmitted information or documents in interstate commerce via the processing of credit card transactions for Elite.

The Employee's Attorney.™



142.   Throughout Tucker's employment, he did not qualify as a carrier driver pursuant to 49 C.F.R § 391.1.

143.   At all times referenced herein, Tucker was employed by Elite exclusively as a Local Driver.

144.   Throughout Tucker's employment, he did not perform Out of State Towing Services.

145.   Throughout Tucker's employment, he was not subject to being assigned to provide Out of State Towing Services.

146.   Throughout Tucker's employment with Elite, he did not have a CDL.

147.   Elite hired Tucker with knowledge that he lacked a CDL.

148.   Elite did not require Tucker to obtain a CDL.

149.   Elite did not maintain a Driver Qualification File for Tucker during his employment.

150.   Elite did not maintain a Medical Certificate for Tucker during his employment.

151.   Elite did not maintain an Hour Log for Tucker during his employment.

152.   Tucker was not required to perform an Inspection prior to operating Elite vehicles.

153.   Elite regularly made Fuel Deductions from Tucker's pay.

154.   Elite regularly made Mechanical Deductions from Tucker's pay.

155.   Elite occasionally made Repair Deductions from Tucker's pay.

156.   In 2012, Tucker was involved in an incident in which an Elite customer's door was damaged when Tucker was performing a "lockout" service ("Lockout Damage").

157.   Elite deducted the entire cost of the Lockout Damage from Tucker's pay.

158.   Because the Lockout Damage bill was larger than Tucker's paycheck, Elite treated the remaining balance of $609.00 as a loan.

159.   Elite regularly made Equipment Deductions from Tucker's pay.

160.   During his employment with Elite, Tucker routinely worked 55-60 hours per week.

The Employee's Attorney.™



161.    Defendants did not pay Tucker overtime for all hour worked over 40 in a given week.

162.    Tucker's average hourly wage was less than $11.77 per hour for all hours worked during several weeks in which he worked greater than 40 hours.

163.    Tucker's average hourly wage was at times less than the minimum wage.

164.    On one or more occasions, Elite paid Tucker less than $350.00 for 80 hours of work in a given week.

165.    During his employment, Tucker witnessed several Violations.

166.    Tucker reported the Violations orally and in writing.

167.    Wright refused to respond to Tucker's complaints about Violations.

168.    Wright retaliated against Tucker by ordering him to risk bodily harm by operating Elite vehicles that had several substantial safety defects.

169.    As a result of Defendants' acts and omissions, Tucker has sustained and will continue to sustain great and irreparable injury.

**Plaintiff Kevin Buckmaster**

170.    Buckmaster is a former employee of Elite

171.    Buckmaster was first hired by Elite in or around December of 2013.

172.    At all times referenced herein, Buckmaster was individually covered under 29 U.S.C. § 207(a)(1) of the Fair Labor Standards Act ("FLSA") because he regularly prepared, handled, and/or transmitted information or documents in interstate commerce via the processing of credit card transactions for Elite.

173.    Throughout Buckmaster's employment, he did not qualify as a carrier driver pursuant to 49 C.F.R § 391.1.

174.    At all times referenced herein, Buckmaster was employed by Elite exclusively as a Local Driver.



175. Throughout Buckmaster's employment, he did not perform Out of State Towing Services.

176. Throughout Buckmaster's employment, he was not subject to being assigned to provide Out of State Towing Services.

177. Throughout Buckmaster's employment with Elite, he did not have a CDL.

178. Elite hired Buckmaster with knowledge that he lacked a CDL.

179. Elite did not require Buckmaster to obtain a CDL.

180. Elite did not maintain a Driver Qualification File for Buckmaster during his employment.

181. Elite did not maintain a Medical Certificate for Buckmaster during his employment.

182. Elite did not maintain an Hour Log for Buckmaster during his employment.

183. Elite regularly made Fuel Deductions from Buckmaster's pay.

184. Elite regularly made Mechanical Deductions from Buckmaster's pay.

185. Elite occasionally made Repair Deductions from Buckmaster's pay.

186. Elite regularly made Equipment Deductions from Buckmaster's pay.

187. During his employment with Elite, Buckmaster routinely worked 48 hours per week.

188. Defendants did not pay Buckmaster overtime for all hour worked over 40 in a given week.

189. Buckmaster's average hourly wage was less than $11.77 per hour for all hours worked during several weeks in which he worked greater than 40 hours.

190. Buckmaster's average hourly wage was at times less than the minimum wage.

191. In or around December of 2013, Buckmaster reported the Marijuana Incident to Riley and Evans.

192. Buckmaster reported the Marijuana Incident both orally and in writing.

193. In or around January of 2014, Defendants terminated Buckmaster without cause or justification.

194. Defendants terminated Buckmaster because he reported the Marijuana Incident.

The Employee's Attorney.™



195.   As a result of Defendants' acts and omissions, Buckmaster has sustained and will continue to sustain great and irreparable injury.

## COUNT I: FAILURE TO PAY MINIMUM WAGE

196.   Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

197.   During Plaintiff's respective dates of employment with Elite, Defendants failed to pay them the proper minimum wage rate as prescribed by R.C. 4111.01, *et seq.*

198.   As a result, Defendants failed to pay Plaintiffs at a wage rate required under R.C. § 4111.02 and/or 29 U.S.C. § 206.

199.   As a direct and proximate cause of Defendants' conduct, Plaintiffs suffered damages.

200.   Defendants willfully and/or intentionally violated R.C. § 4111.02 and 29 U.S.C. § 206.

201.   Defendants acted in bad faith in violating R.C. § 4111.02 and 29 U.S.C. § 206.

202.   As a direct and proximate cause of Defendants' conduct, pursuant to R.C. § 4111.02, Defendants are liable to Plaintiffs for the full amount of the required minimum wage rate.

203.   As a direct and proximate cause of Defendants' conduct, pursuant to 29 U.S.C. § 216(b), Defendants are liable to Plaintiffs for the full amount of the required minimum wage rate, an additional equal amount as liquidated damages as well as costs and reasonable attorney fees.

## COUNT II: FAILURE TO PAY OVERTIME COMPENSATION

204.   Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

205.   Plaintiffs each worked over 40 hours per week during thier employment with Defendants.

206.   Defendants did not pay Plaintiffs overtime wages for hours worked over 40 per week.

The Employee's Attorney.™



207.   Pursuant to R.C. § 4111.03(A) and 29 U.S.C. § 207, an employer must pay a non-exempt employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of 40 hours in one work week.

208.   Plaintiffs were non-exempt employees for purposes of R.C. § 4111.03(A) and 29 U.S.C. § 207.

209.   As a direct and proximate cause of Defendants' failure to pay Plaintiffs their lawfully earned overtime wages, Plaintiffs suffered damages.

210.   Defendants willfully and/or intentionally violated R.C. § 4111.03(A) and 29 U.S.C. § 207.

211.   Defendants acted in bad faith in violating R.C. § 4111.03(A) and 29 U.S.C. § 207.

212.   As a direct and proximate cause of Defendants' failure to pay Plaintiffs their lawfully earned overtime wages, pursuant to R.C. § 4111.10(A), Defendants are liable to Plaintiffs for the full amount of the overtime wage rate, and for costs and reasonable attorneys' fees as may be allowed by the Court.

213.   As a direct and proximate cause of Defendants' failure to pay Plaintiffs their lawfully earned overtime wages, pursuant to 29 U.S.C. § 216(b), Defendants are liable to Plaintiffs for the full amount of the overtime wage rate, an additional equal amount as liquidated damages as well as costs and reasonable attorney fees.

## COUNT III: COLLECTIVE ACTION

214.   Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

215.   Plaintiffs brings Counts I and II of this action on their own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendants' unlawful conduct.

The Employee's Attorney.™



216. The class which Plaintiffs seek to represent and for whom Plaintiffs seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiffs themselves are currently members, is composed of and defined as follows: *All former and current hourly employees of Elite at any time between July 11, 2011, and the present.*

217. Plaintiffs are unable to state at this time the exact size of the potential class, but upon information and belief, aver that it consists of 15 or more persons.

218. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C.§ 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiffs, numerous current and former employees are similarly situated with regard to their wages and claims for unpaid wages and damages. Plaintiffs are representative of those other employees and are acting on behalf of their interests as well as their own in bringing this action.

219. These similarly-situated employees are known to Defendants and are readily identifiable through Defendants' records. These individuals may readily be notified of this action, and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

## COUNT IV: UNLAWFUL RETALIATION IN VIOLATION OF OHIO REVISED CODE § 4113.52.

220. Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

221. During their employment, Plaintiffs discovered and reported several safety and statutory violations.

222. Plaintiffs' reports of safety and statutory violations by Elite were made both orally and in writing.

The Employee's Attorney.™

223.   Plaintiffs reasonably believed that these persistent and ongoing practices presented a substantial risk to the personal safety of themselves and others.

224.   Plaintiffs reasonably believed that these persistent and ongoing practices violated Ohio law, including but not limited to Ohio Revised Code §4513.02, *et seq*, and Ohio Revised Code §4503.10, and Ohio Revised Code §2925.11.

225.   Elite failed to investigate, correct and/or remedy these violations.

226.   Subsequent to Plaintiffs' submission of verbal and written statements detailing several safety and statutory violations and Elite's failure to remedy the violations, Wright retaliated against Plaintiffs by forcing them to operate unsafe vehicles which presented an imminent risk of bodily harm to Plaintiffs.

227.   Subsequent to Riley and Buckmaster's submission of verbal and written statements detailing several safety and statutory violations and Elite's failure to remedy the violations, Wright and Evans retaliated against Riley and Buckmaster by terminating them.

228.   Defendants violated R.C. § 4113.52(B)(1) by terminating Riley and Buckmaster in retaliation for reporting Elite's health and safety violations.

229.   As a direct and proximate cause of Elite's wrongful conduct, Plaintiffs suffered and will continue to suffer damages.

## <u>COUNT V: WORKER'S COMPENSATION RETALIATION</u>

230.   Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

231.   In retaliation against Riley for filing a claim for Worker's Compensation benefits, Defendants terminated Riley in or around January of 2014.

232.   Riley was terminated without just cause for filing a claim for Worker's Compensation benefits.

The Employee's Attorney.™



233.   Riley is therefore entitled to recover damages from Defendants for their wrongful termination of him in retaliation for filing a claim for Worker's Compensation benefits under R.C. § 4123.90.

234.   As a direct and proximate cause of Defendants wrongful conduct, Riley has suffered and will continue to suffer damages.

### COUNT VI: UNLAWFUL RETALIATION BASED ON PROTECTED WAGE COMPLAINTS.

235.   Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

236.   Throughout Riley's employment, Riley made complaints to Defendants regarding their failure to pay him overtime compensation.

237.   Following Riley's complaints and as a proximate cause of the complaints, Defendants terminated Riley.

238.   Pursuant to 29 U.S.C. § 215, no employer shall discharge or in any other manner discriminate against any employee because the employee has made any complaint to the employee's employer, or to the director, that the employee has not been paid wages in accordance with the overtime compensation provisions of 29 U.S.C. § 201 *et seq.*

239.   Defendants' act of terminating Riley from his employment constituted a retaliatory discharge in violation of 29 U.S.C. § 215.

240.   As a direct and proximate cause of Defendants' retaliatory conduct, Riley suffered and will continue to suffer damages.

### COUNT VII: WRONGFUL CONTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY

241.   Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

The Employee's Attorney.™



242.    A clear public policy exists and is manifested in Ohio and Federal statutes and/or administrative regulations, or in the common law, in favor of preventing and/or mitigating the harmful effects of drug abuse and addiction.

243.    This public policy is embodied in the provisions of Ohio Revised Code §2925.11.

244.    Elite's retaliation against and constructive discharge of Riley and Buckmaster jeopardizes this public policy.

245.    Elite's retaliation against and termination of Riley and Buckmaster was motivated by conduct related to this public policy.

246.    Elite had no overriding business justification for terminating Riley and Buckmaster.

247.    As a direct and proximate cause of Elite's wrongful conduct, Riley and Buckmaster suffered and will continue to suffer damages.

### COUNT VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

248.    Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

249.    Defendants intended to cause Plaintiffs emotional distress, or knew that their acts or omissions would result in serious emotional distress to Plaintiffs.

250.    Defendants' conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

251.    As a direct and proximate cause of Defendants' acts and omissions as set forth above, Plaintiffs has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

252.    As a direct and proximate cause of Defendants' conduct and the resulting emotional distress, Plaintiffs suffered and will continue to suffer damages.

The Employee's Attorney.™



**DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs, and all those similarly situated, demand from Defendants the following:

   (a) Issue an order permitting this litigation to proceed as a collective action;

   (b) Order prompt notice, pursuant to 29 U.S.C. § 216(b), to all class members that this litigation is pending and that they have the right to "opt in" to this litigation;

   (c) Award Plaintiffs and the class they represent actual damages for unpaid wages;

   (d) Award Plaintiffs and the class they represent liquidated damages equal in amount to the unpaid wages found due to Plaintiffs and the class;

   (e) Award Plaintiffs and the class they represent pre- and post-judgment interest at the statutory rate;

   (f) Award Plaintiffs and the class they represent attorneys' fees, costs, and disbursements; and

   (g) As to Plaintiffs' individual claims against Defendants, an award against each Defendant of compensatory and monetary damages to compensate Plaintiffs for unpaid overtime compensation, unpaid wages, back pay, front pay, physical injury, physical sickness, and other consequential and/or liquidated damages, in an amount in excess of $25,000 per claim to be proven at trial;

   (h) An award of punitive damages against each Defendant in an amount in excess of $25,000;

   (i) An award of reasonable attorneys fees and non-taxable costs for Plaintiffs' claims as allowable under law;

   (j) An award of the taxable costs of this action; and

   (k) An award of such other relief as this Court may deem necessary and proper.



Respectfully submitted,

s/ Brian D. Spitz
Brian D. Spitz (0068816)
Paula Gallito Shakelton (0078350)
**THE SPITZ LAW FIRM, LLC**
4620 Richmond Road, Suite 290
Warrensville Heights, Ohio 44128
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email:  brian.spitz@spitzlawfirm.com
paula.gallito.shakelton@Spitzlawfirm.com

*Attorney for Plaintiffs*

## JURY DEMAND

Plaintiffs demand a trial by jury by the maximum number of jurors permitted.

*s/ Brian D. Spitz*
Brian D. Spitz (0068816)
Paula Gallito Shakelton (0078350)

The Employee's Attorney.™

